**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re: | |
| | Bankruptcy Case No. 14-24635 TBM |
| SALVATORE TROBIANO, JR. and MICHELLE LEE TROBIANO, | |
| | Chapter 13 |
| Debtors. | |

---

**MEMORANDUM OPINION AND ORDER REGARDING TRUSTEE'S OBJECTION TO CONFIRMATION**

---

This matter comes before the Court on the "Amended Chapter 13 Plan" filed by the Debtors, Salvatore Trobiano, Jr. and Michelle Lee Trobiano (together, the "Debtors") (Docket No. 30, the "Plan"), and the Objection to the Plan filed by the Standing Chapter 13 Trustee, Douglas B. Kiel (the "Trustee") (Docket No. 32, the "Objection"). This issue is whether the Debtors' Plan may be confirmed under 11 U.S.C. § 1325 despite the Trustee's Objection.

I.   <u>Jurisdiction</u>.

This Court has jurisdiction over this Chapter 13 plan confirmation dispute pursuant to 28 U.S.C. §§ 1334(a), (b), and (e)(1). This is a core matter under 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), (b)(2)(L), and (b)(2)(O). Venue in this Court is proper under 28 U.S.C. § 1409.

II.   <u>Procedural and Factual Background</u>.

The Debtors filed for relief under Chapter 13 of the Bankruptcy Code on October 28, 2014 (the "Petition Date"). On the Petition Date, Mr. Trobiano was employed as a pipe fitter. He reported $4,445 per month in gross income on Schedule I. (Docket No. 1. *See also* Employee Income Record, Docket No. 6.) Mrs. Trobiano was employed as a certified nursing assistant and an educational assistant for a school district. She earned $2,651 per month in those jobs. (Docket No. 1.) The Debtors' Schedule I indicated that their disabled daughter received Social Security disability benefits in the amount of $721 per month. With those benefits, the Debtors' total gross income on the Petition Date was approximately $7,818 per month, or $93,816 per year. *Id*. The Debtors' Schedule J showed monthly expenses totaling $6,427. *Id.*

On March 2, 2015, the Debtors filed the Plan[1] (Docket No. 30) along with Amended Schedules I and J. (Docket No. 29.) In their Amended Schedule I, the Debtors reported that Mr. Trobiano lost his job and that his gross income had been reduced (by more than 50%) to $2,098 per month received as unemployment benefits. With their disabled daughter's Social Security

---

[1] Prior to filing the Plan which is the subject of this dispute, the Debtors had filed two other Chapter 13 plans which did not proceed to confirmation. (Docket Nos. 2 and 22.)

income, the Debtors' gross income had, therefore, been reduced to a total of $5,471 per month, or $65,652 per year. The Debtors' Amended Schedule J also showed a reduction in expenses to $4,960 per month.

The Debtors' Plan is based upon the income and expenses reported in their Amended Schedules I and J. The Plan proposes that the Debtors will pay their entire monthly net income of $62 (as computed on Schedule J) to the Trustee for 42 months, following which the Debtors will pay $202 per month for ten months and $702 per month for the final four months of their five-year Plan. In sum, the Debtors propose to pay a total of $7,680 over the life of the Plan, of which $1,962 will be paid to Class Four unsecured creditors. The balance of payments will be allocated to unpaid attorney's fees and costs and the Trustee's compensation.

Because of Mr. Trobiano's uncertain employment scenario, Section V.G of the Plan provides:

> Within 30 days of Debtor-husband obtaining employment, Debtors shall amend Schedule I and modify their plan, as necessary, to pay all disposable income into the plan.

(Plan ¶ V.G.)

On March 16, 2015, the Trustee objected to confirmation of the Plan on the ground that the "Debtors may not be committing all of [their] projected disposable income to plan payments" as required under 11 U.S.C. § 1325(b)(1)(B). No other parties objected to the Plan. The Trustee requested that the Debtors include in their Plan both a "reporting" and an "income turnover" provision stating:

> Debtors will turn over the tax returns and year-end pay advices for every year of the plan. Debtors will turnover 1/3 of gross income in excess of $65,652 during the duration of the plan as well as income reporting commencing 2/1/16.

(Objection ¶ 1.)

An impasse resulted. The Debtors would not agree to include the Trustee's proposed reporting and income turnover provisions in the Plan. Instead, they stood their ground and argued that the Plan could and should be confirmed, as submitted, under Section 1325. The Court conducted a non-evidentiary hearing. At the hearing, the parties agreed that the facts, as set forth above, were undisputed, and that the issue before the Court was purely legal in nature. The Court invited the parties to file supplemental legal briefs in support of their respective positions. Both the Trustee and the Debtors complied. (Docket Nos. 41 and 42, respectively.)

2

III.   Legal Discussion.

A.   Statutory Framework and Summary of Parties' Arguments

In contrast to Chapter 7 liquidation, Chapter 13 of the Bankruptcy Code "allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Harris v. Viegelahn*, ___ U.S. ___, 135 S. Ct. 1829, 1835 (2015). Payments under a Chapter 13 plan generally are made from future earnings. *Id.* Section 1322(a)(1) states that a Chapter 13 plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."

Section 1325(a) mandates that the court "shall confirm a plan" if:

> (1)   the plan complies with the provisions of this chapter and with the other applicable provisions of this title; . . .
>
> (3)   the plan has been proposed in good faith and not by any means forbidden by law . . . .[2]

Section 1325(b)(1) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>
> (A)   the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B)   the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Put another way, if a contested Chapter 13 plan does not provide for a 100% distribution on unsecured creditors' claims, the plan must provide "that **all of the debtor's projected disposable income to be received in the applicable commitment period** . . . will be applied to make payments to unsecured creditors under the plan." Section 1325(b)(1)(B) (emphasis added); *see also In re Williams*, 394 B.R. 550, 562 (Bankr. D. Colo. 2008). Projected disposable income generally is calculated by reference to Sections 101(10A) and 1325(b)(2) using the "forward-looking" approach endorsed by the United States Supreme Court in *Hamilton v. Lanning*, 560 U.S. 505 (2010).

---

[2]   Section 1325(a) also contains other confirmation requirements not at issue in this dispute.

3

As the Trustee notes,

> In most cases, meeting the requirement that "all of the debtor's projected disposable income to be received in the applicable commitment [period] … will be applied to the plan" assumes that the income stated in Schedule I will continue during the plan duration.

(Trustee's Br. at 2.) In other words, the mechanical approach for calculating projected disposable income is determinative in most cases. *See Lanning,* 560 U.S. at 519 (endorsing the Tenth Circuit's "rebuttable 'presumption' that the figure produced by the mechanical approach accurately represents a debtor's 'projected disposable income'").

But — the Trustee posits that this case is different. Because of Mr. Trobiano's changed employment circumstances, the Trustee is reticent to accept the Amended Schedules I and J as the only basis for the Debtors' projected disposable income during the life of the Plan. Citing *Lanning*, the Trustee argues that in cases such as this, where the income reported on a debtor's Schedule I can be expected to increase in the future, the plan **must** include a provision to address that expected change.

In *Lanning*, the United States Supreme Court held:

> Consistent with the text of § 1325 and pre-BAPCPA practice, . . . when a bankruptcy court calculates a debtor's projected disposable income, the court may account for **changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation**.

*Id.* at 524 (emphasis added).

Regarding Mr. Trobiano's employment circumstances, the Trustee asserts that "Debtor's state of unemployment is a factor that is certain to change" and "foreseeable." Furthermore, the Trustee contends that a "plan provision that goes into effect only if income increases [as proposed by the Trustee] operates to meet § 1325(b)'s requirement." (Trustee's Br. at 3.) According to the Trustee, confirmation should be denied unless the Trustee's income turnover provision is included. The Trustee also suggests that the Trustee's proposed language best comports with *Lanning*, in that it takes a "forward-looking" approach to calculating projected disposable income. Moreover, the Trustee contends that the combined proposed reporting and income turnover provisions are efficient, easy to administer, and constitute a "readily ascertainable standard" for reviewing projected disposable income. (Trustee's Br. at 3.) According to the Trustee, incorporating the Trustee's proposed language into the Plan is a reasonable means of ensuring that all of the Debtors' projected disposable income is paid into the Plan, and that the Plan is proposed in good faith.

The Debtors disagree that a mechanical future turnover on the basis of increased income alone is required under *Lanning*, arguing that such approach fails to take into account the "totality of Debtors' household dynamics." The Debtors assert that the Trustee's provision is unfair in that

it does not account for the possibility that with an increase in the Debtors' income resulting from Mr. Trobiano's possible future employment, their expenses might also rise. They state:

> [W]hen the seemingly arbitrary benchmark figure proposed by the Chapter 13 Trustee takes place, presumably in the last quarter of the year, if Debtor-Husband obtains employment, from that point forward the household will only enjoy a maximum of 1/3 of Debtor-Husband's income, as 1/3 will likely be withheld for taxes. Given the totality of Debtors' household dynamics, the Chapter 13 Trustee's request does not consider the additional out-of-pocket expenses that will be imposed on Debtors' household once Debtor-Husband begins working. These additional expenses may include, but are not limited to, additional gasoline and transportation expenses, expenses for work clothing, learning tools for his new employment, classes for his new employment, adult care for their disabled adult child, food and dining, and professional networking, among other expenses. Therefore, the Trustee's proposal of pre-determined calculated income turnover, fails to provide the financial budgeting flexibility necessary for a family of Debtors' dynamics. Moreover, it is so rigid a calculation as to create the possibility that Debtors would be unable to remain current on their usual monthly financial obligations, including housing, utilities, and other basic needs. As such, the Trustee's proposed calculation and turnover sum, will create a devastating impact on feasibility of Debtors' plan and may place Debtors' family in a position of financial hardship which falls directly in opposition to the premise of feasibility of a plan and the intent of United States Bankruptcy Code.

(Debtors' Br. at 2-3.)

The Debtors argue that their proposed Plan provision, by contrast, requires them to amend or modify their Plan within 30 days after Mr. Trobiano becomes employed. So, if there is more disposable income to pay into their Plan, they will be required to do so promptly. Indeed, according to the Debtors, their proposed provision is more beneficial to creditors because the time to modify is 30 days after Mr. Trobiano's obtaining employment rather than after an annual review. "Under the Trustee's request, should Debtor-Husband obtain employment in the month of January in any given year, nearly a whole year will pass before any additional payment will be turned over to the Trustee," they note. (Debtors' Br. at 2.) Further, the Debtors contend that their proposed Plan provision provides the Trustee with grounds for dismissal of the case in the event that they fail to follow through with the modification requirement.

B.  Legal Analysis.

The Court has before it the Plan, the Objection, and the crux question: May the Court confirm the Plan, as written, over the Trustee's Objection? Or, to state the issue slightly

differently, is the Plan unconfirmable unless and until the Debtors incorporate the Trustee's proposed reporting and income turnover provisions?

In evaluating whether a plan comports with projected disposable income requirements of Section 1325(b)(1)(B), a bankruptcy court may "account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning*, 560 U.S. at 524. In this case, the Trustee asserts that the Court must require the Debtors to include the Trustee's proposed language in the Plan because "Debtor's state of unemployment is a factor that is **certain to change**." (Trustee's Br. at 3 (emphasis added).)

While appreciating the Trustee's position and his laudable efforts to protect creditors, the Court does not agree that both of the Trustee's proposed provisions are required for confirmation of the Plan. On this record, the Trustee has offered no evidence of any of the following:

- That Mr. Trobiano will (or, at least, is likely to) obtain a job;
- When the job will be secured;
- What the job will be;
- What Mr. Trobiano's future salary will be;
- What the non-salary benefits will be; or
- How the job will affect the Debtors' expenses and resulting future disposable income.

Admittedly, *Lanning* endorses a "forward-looking" approach that permits a court to consider potential future adjustments in projected disposable income. But the holding is limited: "the court may account for changes in the debtor's income or expenses that are **known or virtually certain** at the time of confirmation." *Lanning* does not require the Court to speculate as to the possible impact of a change in circumstance that may affect income or expenses but is not known or virtually certain at the time of confirmation.

Although the Court, the Trustee, and the Debtors all likely hope that Mr. Trobiano will be hired soon — there is no evidence that Mr. Trobiano's future employment prospects are known or virtually certain now or during the term of the Plan. But even assuming that his possible future employment would result in increased income, there is no way of knowing whether the increased income would actually result in an increase in disposable income such that an increased Plan payment is warranted. Indeed, the Debtors' original Schedule I indicates that when Mr. Trobiano was employed, the Debtors' combined monthly net income[3] was $6,489. Their original Schedule J indicates that expenses were $6,427 — leaving about $72 in projected disposable income. After Mr. Trobiano became unemployed, the Debtors' combined monthly net income was reduced to $5,022, but the Debtors' expenses also decreased to $4,960 — leaving about $62 in monthly disposable income.

---

[3]   Combined monthly net income is gross income, net of payroll deductions, and includes the Social Security benefits received by the Debtors' daughter.

If Mr. Trobiano becomes employed and the Debtors' expenses increase to their Petition Date levels,[4] it is entirely possible that their disposable income would not rise at all; or at least would not rise substantially enough to require a modification. Thus, there is no certainty whether a change in Mr. Trobiano's employment status really would translate into higher monthly net income.

Requiring the Debtors to pay to the Trustee a fixed portion of their possible future income above a certain annual threshold might well leave the Debtors in the position of being unable to meet their monthly expenses and, as the Debtors note, could also result in their owing a substantial amount to the Trustee at the end of each reporting year that would render them unable to comply with their Plan obligations. Budgeting could also be difficult if the income from Mr. Trobiano's new employment were not constant. Indeed, the upside of the Debtors' proposed provision is that a modified plan based on the Debtors' income and expenses post-confirmation will provide them with a concrete set of responsibilities and payment obligations.

Recognizing the lack of certainty in Mr. Trobiano's future employment, the Debtors have included a Plan provision that requires them "[w]ithin 30 days of [Mr. Trobiano's] obtaining employment to . . . . amend Schedule I and modify their plan, as necessary, to pay all disposable income into the Plan." (Docket No. 30.) The Debtors' proposal seems both reasonable and consistent with the statutory requirements of Section 1325 (b)(1)(B). The plain text of the Bankruptcy Code does not require more.

In his brief, the Trustee argues that the "as necessary" qualifier in the Plan is too permissive in that it leaves open the possibility that the Debtors, upon a subjective determination that modification is not necessary, will not seek to modify. Utilizing the Debtors' provision, the Trustee contends, would "put[] the burden on the Trustee to move for modification if Debtors choose not to do so." By contrast, the Trustee argues, a mechanical increase will ensure that an increase in disposable income reaches creditors, as intended by Section 1325(b)(1)(B). The Trustee asserts that there is no harm to Debtors in requiring such approach, because if the mechanical increase based on increased income does not accurately reflect the Debtors' disposable income, the Debtors can always move to modify the Plan under Section 1329.

While it may be true that the Trustee's preferred mechanical requirement would not take the option of seeking modification away from the Debtors, the Bankruptcy Code, as interpreted by the Court in *Lanning*, simply does not require the Debtors to include this kind of provision in their Plan in order to address, prospectively, the impact of uncertain future changes. Instead, the Bankruptcy Code requires only that the Debtors' Plan provide for monthly payments to the Trustee on the basis of their projected disposable income, the calculation of which is based on Sections 101(10A) and 1325(b)(2) along with consideration of future changes in income and expenses that are "known or virtually certain" at the time of confirmation.[5]

---

[4] The Debtors suggest (in argument) that if Mr. Trobiano obtains a job, their expenses may increase to include costs for adult daycare for their disabled adult daughter. The Court also can envision circumstances where a debtor's expenses increase as a result of a longer commute, increased clothing expenses, or any number of other reasons, resulting from employment at a new job.

[5] Or, as Judge Romero explained, "Under the *Lanning* interpretation, the calculation on Form 22C is just the starting point for the analysis of projected disposable income.... The Court may still consider Schedules I and J, as well

By requiring the Debtors, first, to file an amended Schedule I, but requiring the filing of a modified plan only "as necessary," the Debtors' provision certainly leaves open the possibility that they might not file a modified plan. But, as discussed above, increased income alone does not necessarily indicate an increase in disposable income that warrants modification. Under the Debtors' provision, if the Debtors' income were to increase without an increase in expenses, then the "as necessary" language[6] would compel the Debtors to file a modified plan. However, the Debtors' provision also leaves open the possibility of their filing an amended Schedule J in the event that their expenses do increase with Mr. Trobiano's possible future employment. If the two Schedules together, as supported by the Debtors' tax returns and pay advices, were to show that there was no meaningful increase in disposable income, then there would be no basis for increasing payments under the Debtors' Plan, and no need to file a modified plan because the requirements of Section 1325(b)(1)(B) would be met. If, however, the Debtors fail to file an amended Schedule I within 30 days after Mr. Trobiano's employment or fail to file a modified plan after securing increased disposable income, then the Trustee could move to dismiss the case under Section 1307(a)(6) for a material default under the terms of the Plan.

The Court recognizes that the Debtors' proposed Plan provision places a certain burden on the Trustee to monitor the Debtors' finances post-confirmation. But, requiring the Trustee to shoulder this burden is consistent with the requirement in the Bankruptcy Code that the Trustee "investigate a debtor's financial affairs" under Section 704, as incorporated by Section 1302. In light of this requirement, and in order to enable the Trustee to determine whether the Debtors have fully complied with the provision requiring them to file a modified plan "as necessary," the Court agrees that the Plan must include a provision mandating that the Debtors provide the Trustee with their year-end pay advices and tax returns on an annual basis.[7] The Court further notes that such reporting requirement is consistent with Sections 521(f)(4)(B) and (g)(2), which require Chapter 13 debtors, on request of the Court, the United States Trustee, or any party in interest, to file with the Court an annual statement of income and expenditures, including the sources of income to the debtors, and annual tax returns. Thus, incorporating the reporting requirement into the Plan, after the Trustee's request, does nothing more than reaffirm the Debtors' statutory obligation to provide such information.

Contrary to the Trustee's contention, the Debtors' "modification, as necessary" language does not place the Trustee in the position of having to seek modification of the Plan. Instead, the Trustee's burden is the same as it would be in any situation where a debtor's financial circumstances change during the course of a confirmed plan. Specifically, if, in his review of tax returns or other information available to him under Sections 521(f)(4)(B) and (g)(2), the Trustee

---

as changes in a debtor's post-petition income and expenses." *In re Toxvard*, 485 B.R. 423, 431 (Bankr. D. Colo. 2013) (citing *Lanning*, 545 F.3d at 1282).

[6] The Court interprets the "as necessary" language as requiring the Debtors to file a modified plan in the event that their disposable income increases. While a provision requiring Debtors to amend Schedule I within 30 days of Mr. Trobiano's obtaining employment and to file a modified plan "in the event that the Debtors' income increases as a result of such employment" might provide a higher degree of clarity, in this case, the Court's interpretation should guide the parties in their implementation of the terms of this Plan.

[7] The Debtors only seem to dispute that they are required to include in their Plan the Trustee's proposed provision requiring turnover of gross annual income in excess of $65,652; they do not, however, expressly agree to include an annual reporting requirement in their Plan. Accordingly, the Court addresses the issue in this Order.

discovers that the Debtors have not sought a modification necessary to account for payment of increased disposable income resulting from Mr. Trobiano's employment, the Trustee retains the option to request modification of the Plan under Section 1329 if doing so is consistent with his fiduciary duties. Moreover, because the Debtors' Plan specifically requires the Debtors to file a modification "as necessary," they face the prospect of dismissal in the event that they fail to seek a modification "as necessary" to capture their disposable income. As such, the Plan goes a long way to ensure that the Trustee will not be placed in the position of having to seek modification. In short, the Debtors' proposed language will ensure that the Debtors — rather than the Trustee — will modify their Plan if doing so is required to ensure that disposable income realized by virtue of Mr. Trobiano's possible (but uncertain) future employment is paid to unsecured creditors through the Plan.

IV.     Conclusion and Order.

The Court finds that Debtors' Plan comports with the requirements of 11 U.S.C. §§ 1322, 1325(b)(1)(B), and *Lanning*.[8] Specifically, because the Plan requires modification "as necessary" to ensure that all disposable income is paid into the Plan, the Debtor's provision is consistent with the "good faith" requirement in Section 1325(a)(3). However, since the Trustee's request that the Debtors turn over year-end tax returns and pay advices for every year of the Plan is required to enable the Trustee to determine whether the Debtors are complying with the Plan, the Debtors shall be required to include the reporting provision proposed by the Trustee. Accordingly, the Court hereby:

ORDERS that the Trustee's Objection is OVERRULED to the extent he seeks to require Debtors to include in their Plan the following provision: "Debtors will turnover 1/3 of gross income in excess of $65,632 during the duration of the [P]lan." Such provision is not required in the Plan;

ORDERS that the Objection is SUSTAINED to the extent that it seeks to require the Debtors "turn over the tax returns and year-end pay advices for every year of the plan . . . commencing 2/1/16."; and

FURTHER ORDERS that the Debtors shall file, by **July 7, 2015**, a Corrected Amended Chapter 13 Plan which adds the following provision in Section V.G. "Debtors will turn over the tax returns and year-end pay advices for every year of the plan commencing 2/1/16." Provided that such addition is the only change to the Corrected Amended Chapter 13 Plan, no further notice

---

[8]     As set forth below, compliance with L.B.R. 3015-1(g)(4) and submission of a Verification of Confirmable Plan will be required prior to a final determination of confirmation.

of the Corrected Amended Chapter 13 Plan shall be required.  Assuming that all other confirmation requirements are satisfied upon filing of the Corrected Amended Chapter 13 Plan, the Debtors may file a Verification of Confirmable Plan consistent with L.B.R. 3015-1(g)(4) notwithstanding the Trustee's Objection.

DATED this 23rd day of June, 2015.

BY THE COURT:

_Thomas B. McNamara_
Thomas B. McNamara, Bankruptcy Judge